MARY LEE, Plaintiff in Error, *vs.* THE DETROIT BRIDGE AND IRON WORKS, Defendant in Error.

1. *Master and servant—Injury—Fellow-laborer, incompetency of—When master liable.*—A master is not liable for damages to his servant, occasioned by negligence or unskilfulness of a fellow-servant, unless there be evidence tending to show that the master, or his agent, in selecting the servant had reason to know of such incompetency, or failed to make such inquiries as prudence required when he was employed, or retained him after his incompetency or unfitness had become obvious.

2. *Master and servant—Injury—Fellow-servant, incompetency of—Negligence, one act of—Evidence.*—One single act of negligence by a servant does not by itself have any tendency to establish general incompetency.

*Error to Buchanan Circuit Court.*

*Doniphan & Reed,* for Plaintiff in Error.

*W. H. Sherman,* for Defendant in Error.

I. A master is not liable to his servants for injuries to them produced by the negligence of a fellow servant, unless the master has been negligent in the appointment of such negligent agent, or in retaining such servant after notice of his incompetency. (Whart. Negl., § 224, and cases cited; Shearm. & Redf. Negl., § 86, and cases cited.)

II. The *onus* of proof of such negligence, or want of care, is on the plaintiff. (McDermott vs. Pac. R. R. Co., 30 Mo., 115; Rohback vs. Pac. R. R. Co., 43 Mo., 187; Harper vs. Ind. & St. L. R. R. Co., 44 Mo., 488; Gibson vs. Pac. R. R. Co., 46 Mo., 163; Moss vs. Pac. R. R. Co., 49 Mo., 168; 32 Md., 410; 37 Eng. C. L., 281; Shearm. & Redf. Negl., § 99, and cases cited; Whart. Negl., §§ 234, 243, and note.)

III. Single exceptional acts of negligence do not prove an employee to be incompetent. (49 Mo., 167; 62 Barb., 623; 38 Ind., 294; 38 Penn. St., 104; 7 Gray, 92; 6 Cush., 396; Whart. Negl., § 238, note 2.)

NAPTON, Judge, delivered the opinion of the court.

This action was brought, under the 3rd section of our law concerning damages, to recover $5,000 for the death of plain-

tiff's husband, alleged to have been occasioned by the negligence of the defendant.

The petition alleges, that Lee was a day laborer in the employment of defendant; that in adjusting a lock frame, which supported the shaft and lock in the caisson of the pivot pier of the bridge across the river at St. Joseph, Lee was ordered by the assistant superintendent to assist; that the frame was carelessly and negligently swung upon a rolling dolly, and not properly secured; that the duty of adjusting and moving this frame, and working upon it, was such as required skilled and experienced men, for which greater compensation was paid than to day laborers; that it was the duty of the defendant to employ on such work competent and experienced workmen, and to provide secure machinery and appliances, and have it worked in a careful manner; but that defendant failed to employ such skilful and competent men, and carelessly and negligently permitted the use of defective and improper appliances, and entrusted them to the control of incompetent persons, and, in consequence of such negligence, plaintiff's husband was precipitated into the river and drowned.

The answer denies all the allegations of the petition, and sets up contributory negligence, which the replication denies.

After the evidence was given for plaintiff, the court instructed the jury that the plaintiff could not recover, and thereupon plaintiff took a non-suit with leave, etc., and subsequently moved to set it aside, which motion being overruled, the case is brought here by appeal.

It appears from the testimony, that the accident occurred in putting in a frame into the caisson. This frame had been built on the bank of the river, and moved on a dolly to the point where it was suspended, directly over the caisson, by a block and tackle to let it down to its proper place in the caisson. The ropes around the frame embraced the plank, on which it rested, and the dolly, on which it had been moved, and were so unskilfully adjusted, that, when the foreman ordered the men to jump on it, to press it down, it inclined to

one side, and five of the men on it were precipitated into the water, and one of them, Lee, was drowned.

The machinery was all right; there was no defect in the ropes or pulley, or any other appliances used; but the dolly was improperly left under the plank on which the frame rested. The work was under the immediate care of one Shepley, who with another foreman, named Taylor, was putting on the frame. Both of these foremen were under the supervision of Patton, assistant superintendent, and Robinson, general superintendent. Patton and Robinson were both present when the accident occurred. It does not appear, however, that Robinson interfered in any way, except to call attention to Lee when he fell through.

One witness states, that Patton called on the men to jump on the frame, and Shepley first jumped on and called on others to do so, and Shepley and four others fell into the water from the frame.

There is one witness who gives it as his opinion, that Shepley was incompetent for the place of foreman of bridge carpenters; but there was no proof showing, or tending to show, that defendant was guilty of negligence in his employment, or retained him in their employment after being apprised of his incompetency.

There is no evidence at all of any insufficiency of the machinery or of any of the appliances used to put this frame into the caisson. All the witnesses think the accident occurred, not from any defect of machinery, but from the carelessness or unskilfulness of Shepley in fastening the rope around the dolly, thereby rendering the frame liable to slip to one side. It does not appear that Patton, who was assistant superintendent, was aware of this negligence on the part of Shepley, when he ordered the men to jump on the frame, if he did so order them.

The general rule, that a master or employer is not liable for an injury to a servant or employee, occasioned by the negligence or unskilfulness of a fellow-servant, seems applicable to the case presented by the pleadings and evidence. There

is no question, that a master is responsible for negligence or want of care in appointing an incompetent servant, when through the negligence of such servant an injury to a fellow-servant occurs; but there must be some evidence tending to show, that the master or his agent, in selecting an employee, had reason to know of such incompetency, or failed to make such inquiries as prudence required, when he was employed, or retained him after his incompetency or unfitness had become obvious. A single act of negligence assuredly does not establish general incompetency, or by itself have any tendency to do so. It would seem, from the fact that Shepley had already constructed four other caissons for piers in the bridge, without any accident, that the superintendent had reason to believe him perfectly competent to build the fifth.

A careful examination of the evidence has lead to the conclusion, that there was no evidence on either of the two points of fact, which would take the case out of the ordinary rule, none, whatever, in regard to defective machinery, and not enough to take the case to a jury in relation to the employment of incompetent workmen. If a single act of negligence is to be regarded as tending by itself to show incompetency, and furnish any ground for conjecture that such incompetency is known to the company or its agents, then, it must follow, that all cases of damage by negligence of a fellow-servant may be allowed to be traced to the negligent appointment of incompetent subordinates. Practically, such inferences would produce injustice, as the most careful and best qualified workmen in any branch of mechanism are liable to mistakes.

In the present case the unfortunate disaster seems to have been occasioned by some defective arrangement of the tackle, which allowed the platform, on which the weight of 9 or 10 men was unequally distributed, to sway to one side, and perhaps the retention of the circular dolly, or roller, contributed to render unsafe the experiment of getting down the frame into its place by the weight of the men.

It does not appear that the superintendent, Robinson, took any part, whatever, in this work, or that his assistant, Patton,

did any more than second the order of Shepley for the men to jump; there being no apparent danger to him or any of the others engaged, as is rendered clear from the fact, that the foreman Shepley was the first to get on the platform. The whole work was entrusted to Shepley and Taylor, who were foremen of the bridge carpenters, and the accident was evidently the result of the carelessness of Shepley in adjusting the rope, or retaining the dolly under the plank.

The judgment must be affirmed. The other judges concur, except Judges Wagner and Vories, who are absent.