# FOGARTY v. ST. LOUIS TRANSFER COMPANY, Appellant.

### Division One, March 17, 1904.

1. **CONTRACT MADE IN ANOTHER STATE: Law Governing.** Plaintiff sues a Missouri corporation for injuries received in another State at a time he was employed under a contract made in another State. *Held*, in an action for negligence, that the liability of defendant must be determined and measured by the laws of that State.

2. **MASTER AND SERVANT: Dual Capacity of Foreman.** An employee may be a vice principal of his master, and also a colaborer or fellow-servant of the person injured while in the employ of the master; and whether he is the one or the other depends upon the relation he sustains to the master in the doing of the act which results in the injury. If the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his colaborers, he is a vice principal, and the master is liable for the injuries consequent upon his negligence. But if his negligent act was not done in the exercise of his representative authority, but in his capacity as a colaborer at the time with those under his control, his act is that of a fellow-servant. This is the law of Illinois and of Missouri as well.

3. ——: ——: **When Master is Liable.** If the foreman at the time he performed the negligent act which resulted in the injury of another employee was acting in his capacity as vice principal of the master, the master is liable. Otherwise, he is not liable.

4. ——: ——: **Question for Jury.** Under the Illinois law, the general rule is that whether the injury resulted from the act of the foreman in his capacity as vice principal, or from that of a fellow-servant of the injured party, is a question for the jury to decide from all the circumstances in evidence, and the question is one of law only when the facts are conceded or there is no dispute in reference thereto, and when all reasonable men will agree from the evidence and the legitimate conclusions to be drawn therefrom that the negligent representative, at the time he acted, was acting as a colaborer and not as a vice principal.

5. ———: ———: ———: **Vice Principal: Case Stated.** The fore-
man of a transfer company was manager of the company's sta-
ble, and had power to employ and discharge the men, buy feed
and stable supplies, direct the men where, how and when they
should work, and see that they did their work, and as a part of
his duty to lend them a helping hand whenever he deemed it
necessary. He directed plaintiff, a laborer 36 years old, to back
a wagon loaded with 24,000 pounds of iron girders into an alley,
and when plaintiff could not succeed because one of the horses
refused to back, he called plaintiff to account, and ordered him
to mount the wagon, beat the horses over the nose and other-
wise assumed control of the situation, and directed a helper to
hitch another team to the wagon tongue, and took the reins of
that team away from the helper. *Held,* that so far the foreman
acted as vice-principal. Then the team was seesawed, and
when it violently ran too far to one side the wheels ran under
the girders, they were thrown off, and plaintiff with them, and
he was injured, and this was caused by the negligent manner in
which the foreman handled the team. *Held,* that under the Illi-
nois law, which is, that the foreman from the time he assumed
charge of the team is not to be considered a fellow-servant with
the plaintiff unless the circumstances and the legitimate deduc-
tions therefrom are such that reasonable minds can not fairly
differ upon the question, the verdict of the jury and its approval
by the court, under instructions which required the jury to find
that the foreman at the time was acting as the master's vice
principal, will not be disturbed, since the fact that the foreman
when he arrived on the scene assumed control of the situation
affords some basis for the deduction that he acted throughout
the whole matter as a vice principal.

Appeal from Franklin Circuit Court.—*Hon. Jno. W.
McElhinney,* Judge.

AFFIRMED.

*Randolph Laughlin* for appellant.

The court erred in refusing defendant's instruc-
tion in the nature of a demurrer to the plaintiff's evi-
dence: Because such evidence showed that the injury
was caused by the act of a fellow-servant. (a) It is
the act, and not the rank, of Edwards which determines
whether he and Fogarty were fellow-servants at the
time of the injury. Wood on Master and Servant, p.

860; Harper v. Railroad, 47 Mo. 580; Lee v. Detroit Bridge and Iron Works, 62 Mo. 565; Marshall v. Schricker, 63 Mo. 311; Moore v. Railroad, 85 Mo. 596; Schaub v. Railroad, 106 Mo. 87; Miller v. Railroad, 109 Mo. 356; Card v. Eddy, 129 Mo. 514; Grattis v. Railroad, 153 Mo. 394; Hawk v. McLeod Lumber Co., 166 Mo. 129; Bane v. Irwin, 172 Mo. 317; Garland v. Railroad, 85 Mo. App. 583; Railroad v. Baugh, 149 U. S. 387; Railroad v. Keegan, 160 U. S. 267; Reed v. Stockmeyer, 74 Fed. 192; Railroad v. Charless, 162 U. S. 359; Deep Mining Co. v. Fitzgerald, 21 Col. 542; Railroad v. May, 108 Ill. 288; Gall v. Beckstein, 173 Ill. 187; Barnicle v. Connor, 110 Iowa 240; Andre v. Elevator Co., 117 Mich. 562; O'Neill v. Railroad, 80 Minn. 30; Ross v. Walker, 139 Pa. St. 42; Crispin v. Babbitt, 81 N. Y. 510; Hanna v. Granger, 18 R. I. 511; Di Marcho v. Iron Foundry, 18 R. I. 517; Frawley v. Sheldon, 20 R. I. 258; Morgridge v. Providence Tel. Co., 20 R. I. 386; Allen v. Goodwin, 92 Tenn. 385; Gann v. Railroad, 101 Tenn. 380; Fertilizer Co. v. Travis, 102 Tenn. 16; Sayward v. Carlson, 1 Wash. 29; Klochinski v. Shores Lumber Co., 93 Wis. 425; Dwyer v. American Express Co., 82 Wis. 312; Ell v. Railroad, 1 N. Dak. 336; Davis v. Railroad, 55 Vt. 84; Dougherty v. Log Driving Co., 76 Me. 143; Yates v. McCullough, 69 Md. 370. (b) The act of "jerking and whirling about the lead horses of plaintiff's team" was the act of a fellow-servant. Hanna v. Granger, 18 R. I. 507; Di Marcho v. Builder's Iron Foundry, 18 R. I. 516; Frawley v. Sheldon, 20 R. I. 258; Gann v. Railroad, 101 Tenn. 382; Railroad v. Charless, 162 U. S. 364; Barnicle v. Connor, 110 Iowa 240; Crispin v. Babbitt, 81 N. Y. 516; Reed v. Stockmeyer, 74 Fed. 186; Gall v. Beckstein, 173 Ill. 187; Meeker v. Remington & Son Co., 65 N. Y. Supp. 1116; Taylor v. Railroad, 121 Ind. 124; Deep Mining Co. v. Fitzgerald, 21 Col. 533; Drinkout v. Eagle Machine Works, 90 Ind. 423; Salem Stone & Lime Co. v. Chastin, 9 Ind. App. 453; Railroad v. Torrey, 58 Ark. 217;

Railroad v. May, 108 Ill. 288; Clay v. Railroad, 56 Ill. App. 235; Railroad v. Massig, 50 Ill. App. 666; Railroad v. Handman, 13 Lea 423; Allen v. Goodwin, 92 Tenn. 385; Sontar v. Elec. Co., 68 Minn. 18; Sayward v. Carlson, 1 Wash. 29; Holtz v. Railroad, 69 Minn. 524; Nat. Fertilizer Co. v. Travis, 102 Tenn. 16; Railroad v. Schwabbe, 1 Tex. Civ. App. 573; Quinn v. N. J. Lighterage Co., 23 Fed. 363; The Miami, 93 Fed. 218, 87 Fed. 757; Dwyer v. American Express Co., 55 Wis. 453, 82 Wis. 312; Lee v. Detroit Bridge & Iron Works, 62 Mo. 565; Marshall v. Schricker, 63 Mo. 311; Moore v. Railroad, 85 Mo. 596; Schaub v. Railroad, 106 Mo. 88; Grattis v. Railroad, 153 Mo. 394; Hawk v. McLeod Lumber Co., 166 Mo. 129; Bane v. Irwin, 172 Mo. 317. (c) Neither the order of Edwards to Fogarty to get up on the wagon, nor the method employed to back the wagon, nor the asserted failure of Edwards to give a warning, are material: (1) Because they were not pleaded as grounds for a recovery. Feeback v. Railroad, 167 Mo. 206; Raming v. Railroad, 157 Mo. 477; Hogan v. Railroad, 150 Mo. 36; Chitty v. Railroad, 148 Mo. 64; Turner v. McCook, 77 Mo. App. 196. (2) Because the order was shown by Fogarty himself to have been a proper one, and the notice was shown by him to have been given. (3) Because neither order, nor method, nor notice, nor want of notice, but only the physical act of handling the team, was the proximate cause of the injury. Reed v. Stockmeyer, 74 Fed. 186; Barnicle v. Connor, 110 Ia. 240; Gall v. Beckstein, 173 Ill. 187; Gavigan v. Railroad, 110 Mich. 71; Deep Mining & Drainage Co. v. Fitzgerald, 21 Col. 533; Crispin v. Babbitt, 81 N. Y. 516. (d) The proximate cause of an injury is the last breach of duty which precedes it. Such breach may be an act of commission or of omission, a breach of the master's duty or of the servant's duty, and the liability will be determined accordingly. Bane v. Irwin, 172 Mo. 317; Illinois Steel Co. v. Schymanowski, 162 Ill. 447; Railroad v. May, 108 Ill. 288;

Gall v. Beckstein, 173 Ill. 187; Reed v. Stockmeyer, 74 Fed. 186; Deep Mining & Drainage Co. v. Fitzgerald, 21 Col. 533; Barnicle v. Connor, 110 Iowa 240; Gavigan v. Railroad, 110 Mich. 71; Adams v. Pennsylvania Company, 48 Ohio St. 623. (e) The master's duty to give warning to his servants is limited in scope to secret, hidden or extraordinary hazards, not incident to the usual course of the employment, the increased danger of which is known to the master, and which the servant either does not know or does not have an opportunity of knowing equal to the master's. Such duty is further limited in character to a general warning of the danger of the thing itself, as distinguished from the possible negligent manner of its performance. The law does not require the master to give notice of every hazard that might occur in the conduct of his work, extending through all its details, nor to have present at all times and at all details, a vice principal with a warning voice and a parental care for each servant engaged in the work. O'Neil v. Railroad, 80 Minn. 30; Reed v. Stockmeyer, 74 Fed. 189; Hussey v. Coger, 112 N. Y. 614; Gavigan v. Railroad, 110 Mich. 73.

*Johnson, Houts, Marlatt & Hawes* for respondent.

(1) Plaintiff was injured through a negligent act of the foreman of defendant, which arose out of and was the direct result of the exercise of the authority conferred upon the foreman by the defendant; and, under both Missouri and Illinois decisions and the correct rule, the defendant is liable. Miller v. Railroad, 109 Mo. 356; Parker v. Railroad, 109 Mo. 394; Gormly v. Iron Works, 61 Mo. 492; Dayharsh v. Railroad, 103 Mo. 570; Russ v. Railroad, 112 Mo. 53; Hutson v. Railroad, 50 Mo. App. 300; Schroeder v. Railroad, 108 Mo. 322; Donnelly v. Mining Co., 77 S. W. 131; Grattis v. Railroad, 153 Mo. 392; Bane v. Irwin, 172 Mo. 317; Railroad v. May, 108 Ill. 288; Railroad v. Moranda, 93

Ill. 302; Fanter v. Clark, 15 Ill. App. 475; Coal Co. v. Wombacher, 134 Ill. 57; Brick Co. v. Sobkowiak, 148 Ill. 580; Steel Co. v. Schymanowski, 162 Ill. 447; Railroad v. Dwyer, 162 Ill. 482; Bridge Co. v. Walker, 170 Ill. 550; Offutt v. Columbian Exposition, 175 Ill. 472; Railroad v. Skola, 183 Ill. 454; Norton Bros. v. Nadebok, 190 Ill. 595; Graver Tank Works v. O'Donnell, 191 Ill. 236; Railroad v. Atwell, 198 Ill. 200; Chicago Hair Co. v. Mueller, 203 Ill. 558; Fraser v. Schroeder, 163 Ill. 459; Rolling Mill Co. v. Johnson, 114 Ill. 57; 1 Shearman & Redfield, Negligence, par. 226; 12 Am. and Eng. Ency. Law (2 Ed.), 926; Mining Company v. Davis, 90 Tenn. 711.    (2)    The question whether the negligent act was the result of the exercise of authority conferred upon the foreman, and was performed in the exercise of that authority, was a question of fact for the jury.    Chicago Hair Co. v. Mueller, 203 Ill. 563; Railroad v. Dwyer, 162 Ill. 482; Bridge Co. v. Walker, 170 Ill. 560; Offutt v. Exposition Co., 175 Ill. 473; Norton v. Nadebok, 190 Ill. 599.    (3)    The question of contributory negligence of the plaintiff was a question for the jury, under instructions, and their finding is conclusive.    Offutt v. Columbian Exposition, 175 Ill. 479; Weber v. Railroad, 100 Mo. 194; Church v. Railroad, 119 Mo. 214.

MARSHALL, J.—This is an action for twenty thousand dollars damages, for personal injuries received by the plaintiff, on April 2, 1898, in East St. Louis, Illinois.    The petition alleges that the plaintiff was in the employ of the defendant, and at the time of the accident was engaged in the work of the master; that one George Edwards was the defendant's foreman and manager in East St. Louis, Illinois; that plaintiff was engaged in the work of the defendant in driving a wagon, loaded with heavy iron girders, and in the attempt to back the wagon into the alley between tracks numbered 20 and 21, of the Big Four railroad; that

while plaintiff was so engaged, "said Edwards, while acting as defendant's said foreman and manager, ordered the lead horses attached, and violently, carelessly and negligently and without notice or warning plaintiff and after having been advised by plaintiff that said load could not be backed, grasped, jerked and wheeled about the lead horses of plaintiff's team, with such violence as to break the tongue of said wagon, and violently disturb the equilibrium of the wagon and its load, breaking the chain that bound the girders, overturning and breaking the wagon, throwing plaintiff upon the ground and causing one of said girders to fall upon him." After all the evidence was in, the plaintiff by leave amended his second amended petition so as to strike out all the specific acts of negligence charged except one, and so as to make the allegations of the petition, following the portion above quoted, read as follows: "And plaintiff states that by reason of the negligence and carelessness of defendant's foreman and manager in carelessly and negligently jerking and whirling the lead horses of the plaintiff's team as aforesaid, said wagon was upset as aforesaid, plaintiff was thrown to the ground and one of the girders thrown upon him, crushing his left leg and painfully injuring his right leg and hip joints."

The answer is a general denial coupled with special defenses, to-wit, first, that the contract of employment of the plaintiff, the labor to be performed by him, and the injury received by him, were all done in the State of Illinois, and hence that the laws of that State control in this case, and that the Illinois laws were and are that the master is liable for the acts of his vice principal so far as they relate to the exercise of the delegated powers and duties of the master, but that if the vice principal also acted as a colaborer, and the injury was caused by his negligence while performing the duties of a colaborer and which might just as readily have happened if such duties had been performed and such

negligent act been done by any other colaborer, the master is not liable; second, a plea of assumption of risk; and, third, a plea of contributory negligence. The reply is a general denial.

There is no conflict in the evidence. The facts proved upon the trial are as follows:

The plaintiff was thirty-six years old, and had been in the employ of the defendant for about eight years. At the time of the accident he was driving a "pull-up team;" that is, his team pulled up the wagons that came across the river from the boat to the levee in East St. Louis. He was employed and his whole work was done in East St. Louis, and the accident occurred there. The defendant is a Missouri corporation, and its principal office and its chief officers are all located in St. Louis. The bulk of its business is hauling freight to and from the railroad termini in East St. Louis to St. Louis. It had a stable in East St. Louis where a great number of men and wagons were employed. George Edwards was the foreman or manager of the stable. He had power to employ and discharge the men, buy feed and stable supplies, direct the men as to when, where and how they should work, see that they did their work, and as a part of his duty, as he expressed it, "I give any man a hand that I see needs it— at any part of the work that I see is required."

The defendant had been engaged in hauling a lot of girders and structural iron from the railroad cars in East St. Louis to a building that was in course of construction in St. Louis. On the day of the accident the plaintiff, by the direction of Edwards, the foreman, had loaded four iron girders on a "long-reach" wagon (that is, a wagon intended for heavy hauling and having a long coupling pole). Three of the girders were thirty feet long, and one was sixteen feet and eight inches long. After they were placed on the wagon, the plaintiff tied the girders together in two places with four

Vol 180 mo—32

pieces of chain, of unequal size and strength, and then by putting wagon stakes in the chain, he twisted it until the slack in the chain was taken up, and he then tied the ends of the stakes to the reach or coupling pole with a rope. When the wagon was thus loaded it weighed 24,000 pounds. He then reported to Edwards that the wagon was loaded, and Edwards ordered him to get a "pull-up team," in addition to his own team, and drive it to the Big Four alley aforesaid, and leave it there for the night. The plaintiff found Walsh, a driver of a "pull-up team," and had him hitch his team to the wagon in the lead. Walsh and the plaintiff then walked on the "near" or left side of their teams, and thus drove the wagon to the alley. When they reached there the plaintiff directed Walsh to unhook his team from the wagon, and when it was done, the plaintiff attempted to back the wagon into the alley aforesaid. One of the horses in his team would not back. When plaintiff had been so engaged for some minutes, Edwards drove up in his cart, and he jumped out and ran over to where plaintiff was. What then occurred is best described by the plaintiff's own testimony, which is as follows:

"While trying to back the team I stood partly in front of my wheel, holding the reins in my hands. My off horse would not back at all. Then George Edwards rode up in his cart the same way I had driven. He jumped out of the cart, run over to me and said, 'Jerry, what the hell is the matter with you now? You don't want to stay here all night monkeying with that wagon.' I says, 'What the hell can I do, George? You see that big horse won't back for me.' He says, 'Damn it to hell, get on that wagon where you ought to be.' I got up. Then he ran out in front of the team, and began to pound them in the face, one with each hand. He didn't back them. Then he says, 'Stay where you are, and we will seesaw them back.' 'Eddie,' he says, 'go over and get that team and hook them on,' and he did

so. 'Eddie,' I says, 'be careful now and don't let him pull too hard; hold the pole and don't let it swing with that near horse, and I will be able to back the wagon out.' ˙Edwards said, 'Go ahead with that team,' and he pulled it around, and I hollered, 'Don't swing that wagon around in that way; straighten them up, and don't let them pull so hard.' Then ˙Edwards got in and said, 'Give me those lines; I will handle that team,' and he gave them a jerk, and swung them around as hard as they could run, and struck the wheel under the coupling pole. Edwards was in a passion when he grabbed the lines. The pole was pointing towards the right, and he swung the team around to the left. The horses came around as hard as they could run, and Edwards was running to try and keep out of their way. He was on the near side, and the horses were coming towards him. When the front wheel struck the reach pole the front bolster went off where the iron was raised, and he pulled the front gear wheel under the wagon entirely, and two of the girders fell off, and me on top of them; two fell off in front, and the other two fell to the bolsters, and one fell off the wagon entirely. I heard the tongue crack, and I fell off with the girders. I was sitting on them. This occurred about a second or so after Edwards grabbed the lines and began to swing the wagon. The short beam was lying on my leg, and I became conscious of what was going on around me a little while after I was pulled out.·

"When Edwards came up, he told Walsh to go to the wheel, and Walsh tried to pull back the wheel after Edwards came, and Edwards tried to help. He then went in front of the horses and tried to beat them back with his hands, and the near horse wouldn't back. Then he said he would 'seesaw them back.' I was sitting up on the girders, and it was perfectly safe for me to sit up there if the wagon was handled right, so that this was a proper wagon and a proper load, provided it was properly handled. ˎ

"When Walsh got his pull-up team hitched on he drove them around, walking on the ground, and I was sitting on the wagon handling the wheel team. He drove them as far as he could go without striking the reach pole, when I told him to straighten them up and not let them pull so hard. He was just about getting the team around straight when Edwards took the lines away from him. I can't say whether Walsh dropped one of the lines or not; I could not see him; nor could I see what occurred between Walsh and Edwards. All I know is, that about that time the horses started to run around. I didn't see the lines in Edwards' hand. I didn't see the front wheels strike the reach pole; I heard it. I believe the accident was caused by the act of the front wheel striking the pole."

Two other witnesses for the plaintiff testified to substantially the same facts. For the defendant, the foreman, Edwards, testified as follows:

"At the time of the accident I saw Fogarty trying to back the wagon, and I says: 'What is the matter, Jerry, can't you back it?' And he said, 'No,' he wouldn't back for him, pointing to the back off horse, which was right. He wouldn't back. I says, 'Well, I will help you,' and the boy was back about here (gesticulating), and I says, 'You can lift on that wheel and I will lift on this one' (indicating) and we tried it and tried it again, and we had no success—could not back it. I then said, 'Wait a minute and I will help you with the team,' and I took hold of Eddie Walsh's team, and drove them down to the pole of the wagon. I think the boy carried the stretchers; I won't be positive about that. We hitched the team up and I swung them to the right as far as I could without the wheel striking the reach, for I didn't intend the wheel to strike the reach, and the wagon went back a little bit. Then I swung them back to the left, with the same intention, for the wagon to go back. As the lead team pulled around to the end of the pole and I

got the wagon to about the same position to the left as I had it to the right, I saw the pole of the wagon go up in the air about as high as the horses' mouths, or maybe a little higher, and I looked around and saw the iron falling off the wagon.

"When I saw Fogarty at the Big Four yards, try- ing to back the wagon, he was sitting on the front part of the beams, with the lines in his hands, trying to back the wagon down, and Eddie Walsh had his team un- hitched."

The defendant also proved by the published reports of the decisions of the courts of Illinois, and by an ex- judge that the "dual capacity doctrine" obtains in Ill- inois; that is, that the same person may be a vice prin- cipal and a fellow-servant at the same time, and whether he is one or the other is determined by the character of the act he does. For his acts as vice principal the master is liable, but "if the negligence complained of consists of some act done or omitted by one having such authority, which relates to his duties as a colaborer with those under his control, and which might just as readily have happened with one of them having no such authority, the common master will not be liable."

At the request of the plaintiff the court instructed the jury in accordance with the theory of the petition and the evidence adduced, and directed them that if they found that the acts of Edwards so charged and proved, "were done by said Edwards in the exercise of his authority as foreman of the defendant," the verdict should be for the plaintiff.

At the request of the defendant the court instructed the jury as follows:

"5. This court instructs you that if the negligence of a foreman arises out of, and is the direct result of the exercise of the authority conferred upon him by the master as a foreman, the master will be liable for such negligence, but if the negligence complained of

consists of some act committed or done by him which relates to his duties as a colaborer with those under his control, and which might just as readily have happened with one of them having no such authority, their employer will not be liable.  If you find and believe from the evidence in this case that the act of Edwards in jerking or whirling the lead horses of plaintiff's team was done by him, not in the exercise of his authority as foreman, under the terms of his employment, but was done in the discharge of his duty as a colaborer with the plaintiff, then you are instructed that the defendant is not liable for any injury resulting from said act, and your verdict will be for the defendant.''

Various other instructions were given at the request of the parties, but they are not pertinent to the decision of the case, and throw no additional light upon the theory upon which the case was tried and submitted to the jury.

At the close of the plaintiff's case and again at the close of the whole case the defendant demurred to the evidence, the court overruled the demurrer, and the defendant properly excepted.

There was a verdict for the plaintiff for the sum of nine thousand dollars, which the court caused to be reduced, by *remittitur*, to six thousand dollars, and after proper steps the defendant appealed.

## I.

The plaintiff assigned twenty errors, but relies principally upon the action of the court in overruling the demurrer to the evidence.

The contract of employment of the plaintiff was made in Illinois.  The work to be done by him and the work he did was in that State.  The accident happened in that State.  The liability of the defendant must, therefore, be determined and measured by the laws of that State.  [Alexander v. Railroad, 48 Ohio St. l. c.

636; Turner v. Tunnel Co., 111 Mich. 578; Railroad v. Lewis, 89 Tenn. 235; Detroit v. Osborne, 135 U. S. 492; Helton v. Railroad, 97 Ala. 275.]

The "dual capacity doctrine" obtains in Illinois. [Railroad v. May, 108 Ill. 1. c. 298; Gall v. Beckstein, 173 Ill. 187.]

In the first case cited the Supreme Court of Illinois thus states the doctrine:

"The true rule on the subject, as we understand it, is this: The mere fact that one of a number of servants who are in the habit of working together in the same line of employment, for a common master, has power to control and direct the actions of the others with respect to such employment, will not of itself render the master liable for the negligence of the governing servant, resulting in an injury to one of the others, without regard to other circumstances. On the other hand, the mere fact that the servant exercising such authority, sometimes, or generally, labors with the others as a common hand, will not of itself exonerate the master from liability for the former's negligence in the exercise of his authority over the others. Every case, in this respect, must depend upon its own circumstances. If the negligence complained of consists of some act done or omitted by one having such authority, which relates to his duties as a colaborer with those under his control, and which might just as readily have happened with one of them having no such authority, the common master will not be liable. For instance, if the section boss of a railway company, while working with his squad of men on the company's road, should negligently strike or otherwise injure one of them, causing his death, the company would not be liable; but when the negligent act complained of, arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his colaborers, the master will be liable."

The rule is the same in Missouri, and, with two

possible exceptions, to be hereafter referred to, has been so declared in the following cases: Harper v. Railroad, 47 Mo. l. c. 580; Lee v. Detroit Bridge & Iron Works, 62 Mo. 565; Marshall v. Schricker, 63 Mo. l. c. 312; Moore v. Railroad, 85 Mo. l. c. 596; Miller v. Railroad, 109 Mo. l. c. 356; Grattis v. Railroad, 153 Mo. l. c. 394; Hawk v. Lumber Co., 166 Mo. 121; Bane v. Irwin, 172 Mo. l. c. 317.

In Harper v. Railroad, supra, this court quoted with approval the following from the Supreme Court of New York, in Brickner v. Railroad, 2 Lansing 506: "Such superintendent may also labor like any other co-laborer, and may be in that respect a colaborer, and his negligence as such colaborer, when acting only as a laborer, may be likened to that of any other."

In Moore v. Railroad, supra, this court said: "We recognize the principle that one may act in the dual character of a representative of the master, and as a fellow-servant. If it had been the duty of the foreman, in this case, to assist, when necessary, in the manual work of repairing the car, in addition to the other duties of superintendent, controlling and directing such work, and he had gone under the car with plaintiff to assist in repairing it, and by some negligent or unskillful act, while so engaged, injured the plaintiff, the latter could not have recovered without proof of facts which entitle one to recover when injured in consequence of the negligence or unskillfulness of a fellow-servant."

In Miller v. Railroad, supra, it was said: "There is no doubt but a foreman or other representative of the master may occupy a dual position; that is to say, he may at the same time be a fellow-servant and an agent or representative of the master."

In Hawk v. Lumber Co., supra, this court said: "In such a case it makes no difference in the application of the law that the employee receiving the injury is inferior in grade to the one whose negligence caused the injury, and this is the full extent of the proof of the

relation that Whalen bore to the plaintiff. While the sawyer might be deemed superior to the deck-hand, the proof is absolutely conclusive that the act of negligence of which the plaintiff complains was the act of a co-servant in his character as such, and not his act representing his master in doing his master's duty."

In Bane v. Irwin, supra, this court, per GANTT, J., said: "We agree with counsel for defendant, 'it is the *act* and not the *rank* of the vice principal which determines whether two employees are fellow-servants.' In this case the acts of Gibbs were the acts of the master. It is true that, according to the evidence, Gibbs at times did the work of a servant in loading and firing the shots, and had the injury occurred while he was performing a servant's duty, he and plaintiff would have been fellow-servants, but it is clear that the negligence in this case was the negligent order to plaintiff to return to the dangerous place and fire the remaining shot and the injury was the consequent result of that order, and not the negligent loading and tamping of the shot. While Gibbs acted in a dual capacity, the injury here resulted from the order, in making which he represented the master."

Thus from the forty-seventh to the one hundred and seventy-second volumes of the Reports of the decisions of this court, extending over a period of thirty-two years, the "dual capacity doctrine" has been recognized and enforced by this court.

One case which is said to be an exception to the rule, is Dayharsh v. Railroad, 103 Mo. 570. At first blush this would appear to be true, but a closer examination and analysis of that case will show, that while some of the language employed might give countenance to the claim that it is not in line with the prior and subsequent cases, still the judgment in the case and the result reached is not in conflict with the rule. For while it is there said that there is no logical difference between the vice principal ordering an act to be done

and his doing it himself, that language must be understood in the light of the facts in judgment, which the opinion states to be, and upon which basis the opinion rests, that the act done by the vice principal in that case was an act within the duty of the vice principal as such, and not an act done by him as a coservant. For it is expressly stated that the act done was an obvious breach of the master's duty to furnish the servant a reasonably safe place for the servant to work. That case, therefore, turned upon the proposition that the ash-pit in which the plaintiff was ordered to work was not a reasonably safe place for him to work, and did not turn upon the "dual capacity doctrine" at all. Read in this sense that case is not out of line, and it must be so understood hereafter. Of course there is no logical difference between the vice principal himself doing an act within the scope of his duty as vice principal, and his ordering someone else to do that act. So likewise there is no logical difference between a vice principal himself doing an act within the scope of his duty as a coservant, and his procuring some one else to do the act for him. As was aptly said in Bane v. Irwin, 172 Mo. l. c. 317: "It is the *act* and not the *rank* of the vice principal which determines" whether he acts in the one or the other of his dual capacities and which measures the master's liability.

The other case which is claimed to hold to the contrary, is Gormly v. Vulcan Iron Works, 61 Mo. 492. It is true that it is there said: "And even if the master or superintendent engage in the same work with the laborer, still they are not fellow-servants, and the servants may recover for any injury caused by their negligence." But in view of the facts in judgment in that case this statement is purely *obiter*. The opinion (p. 493) states the facts to be that: "The injury was received from the bursting of one of the hot ovens or furnaces, and that was caused by the alleged wrongful action of one Withrow who was the general superintend-

ent, *in carelessly ordering the fire to be applied in a manner which was sure to produce an explosion.*" (The italics are added.)   The act here complained of was clearly the order of the vice principal while acting as such.   He did not pretend to act as a coservant.   His order was to do an act that was necessarily negligent, and was not to do a lawful and proper act, which could be safely done or might be negligently done, depending upon the manner of its doing.   The result reached in that case was clearly right, but the language employed as quoted above, was *obiter* and did not correctly state the rule in this State.

The marked ability, deep research and power of analysis of counsel on both sides of this case, have furnished the court with a multitude of cases in other jurisdictions showing that the "dual capacity doctrine" obtains in all of the States of the Union, with the exception of Ohio and Nebraska.   An examination of those cases will show that whenever the injury resulted from the act or order of the vice principal, whether acting by himself or through another, while exercising his power and discharging his duty as a vice principal, the master has been held liable, but wherever the injury resulted from the act of the vice principal while acting in his capacity of colaborer, the master has been held not liable.   The following cases fall within the second class stated, to-wit, where the vice principal acted as a colaborer :· Hanna v. Granger, 18 R. I. 507; Di Marcho v. Iron Foundry, 18 R. I. 576; Frawley v. Sheldon, 20 R. I. 258; Gann v. Railroad, 101 Tenn. 380; Ross v. Walker, 139 Pa. St. l. c. 51; Railroad v. Charless, 162 U. S. l. c. 364; Barnicle v. Connor, 110 Ia. l. c. 240; Crispin v. Babbitt, 81 N. Y. 516; Reed v. Stockmeyer, 74 Fed. 186; Meeker v. Remington & Son Co., 65 N. Y. Supp. 1116; Gall v. Beckstein, 173 Ill. 187; Drainage Co. v. Fitzgerald, 21 Colo. 533; Railroad v. Torrey, 58 Ark. 217; Railroad v. May, 108 Ill. 288; Clay v. Railroad, 56 Ill. App. 235; Railroad v. Massig, 50 Ill. App.

666; Railroad v. Handman, 13 Lea 423; Allen v. Goodwin, 92 Tenn. 385; Soutar v. Electric Co., 68 Minn. 18; Sayward v. Carlson, 1 Wash. 29; Klochinski v. Lumber Co., 93 Wis. 1. c. 419; Holtz v. Railroad, 69 Minn. 524; Fertilizer Co. v. Travis, 102 Tenn. 16; Railroad v. Schwabbe, 1 Tex. Civ. App. 573; Quinn v. Lighterage Co., 23 Blatch. 209; The Miami, 93 Fed. 218; Dwyer v. Express Co., 82 Wis. 1. c. 312.

The following cases fall under the first class stated, to-wit, where the vice principal acted as such and not as a colaborer: Coal Company v. Wombacher, 134 Ill. 57; Fanter v. Clark, 15 Ill. App. 470; Brick Co. v. Sobkowiak, 148 Ill. 573; Railroad v. Dwyer, 162 Ill. 482; Steel Co. v. Schymanowski, 162 Ill. 447; Bridge Co. v. Walker, 170 Ill. 550; Offutt v. Columbian Exposition, 175 Ill. 472; Railroad v. Atwell, 198 Ill. 200.

The case of Railroad v. Skola, 183 Ill. 454, seems to stand in a class by itself. There the foreman ordered the deceased to go under a car and wipe the motors. While he was so engaged, the foreman himself went to some cars that stood on the main track and that needed cleaning, and put one of the cars in motion to bring it down to the track on which stood the car under which the deceased was working. The car moved at a high rate of speed, the foreman was unable to stop it, it collided with the car under which the deceased was working and he was killed. It was held that the master was liable, because the foreman had the power as foreman to decide what cars should be brought from the main track to the cleaning track, and also to decide where such cars when so brought to the cleaning track should be placed. In other words, it was held under such circumstances that the foreman acted as a vice principal and not as a colaborer.

In Norton v. Nadebok, 190 Ill. 595, there was a conflict in the evidence as to whether the operator of a machine was a vice principal or a fellow-servant with a helper who worked around the machine, and the court

said: "As a general rule, the question whether servants of the same master are fellow-servants is a question of fact to be determined by the jury from all the facts of each case. . . . If, however, the facts are conceded or there is no dispute with reference thereto, and all reasonable men will agree, from the evidence and the legitimate conclusions to be drawn therefrom, that the relation of fellow-servants exists, then the question becomes one of law, and not of fact."

In Graver Tank Works v. O'Donnell, 191 Ill. 236, the deceased was injured while working with a gang under the direction of a general foreman of the defendant. The foreman lent a helping hand, but the jury answered the question propounded to them whether the injury was caused by the act of the foreman (and another laborer) while he was helping in the work, that they didn't know. The plaintiff recovered a judgment and it was affirmed by the Supreme Court. The court said: "Neither do we agree with the contention that had the jury answered the interrogatory in the affirmative it would have shown that Alyea (the deceased), Lee (the foreman) and Holub (the fellow-servant) were fellow-servants, which would have defeated a recovery. As the doctrine is well settled in this State that where a servant is injured *as the result of an act of the foreman involving the exercise of his authority,* the fact that the foreman, *at the time of the injury,* is *temporarily acting as colaborer* with the injured servant does not relieve the master from liability upon the ground that they were servants of one common master. [Railroad v. May, 108 Ill. 288; Bridge Co. v. Walker, supra; Offutt v. Columbia Exposition, supra; Railroad v. Skola, 183 Ill. 454.]"

The rule here announced can only mean that a foreman may act as a colaborer at the same time and that even if he is acting as a colaborer at the time of the injury, nevertheless if the injury was caused by his act in his capacity as foreman and not in his capacity as a

colaborer, the master is liable.    And the judgment was allowed to stand in that case upon this principle.

In Chicago Hair Co. v. Mueller, 203 Ill. 558, the foreman had been engaged in throwing down bales of hair from a high pile, and the plaintiff had been engaged in moving them to another place in the factory. The foreman left the pile in an unsafe condition, and went to another part of the factory. The foreman ordered the plaintiff to go back and get two bales that had been thrown down from the pile. While so doing some of the bales fell down from the pile that had been left in an insecure position by the foreman, and injured the plaintiff. A recovery was allowed to stand. This was manifestly upon the ground that the foreman had failed in his duty as a vice principal in ordering the plaintiff to work in an unsafe place. The fact that the foreman in his capacity of colaborer had produced the unsafe place is immaterial, for it was his duty as a vice principal not to order the plaintiff to work in an unsafe place; or, otherwise stated, to furnish the plaintiff a reasonably safe place in which to work. The court said: "The mere fact that Hermes (the foreman) engaged in some labor as a common laborer did not, as a matter of law, make him any the less a vice principal."

When properly understood these cases do not constitute a departure from or a modification of the "dual capacity doctrine." They simply point the working of the rule as applied to the facts in judgment in each case, and illustrate the rule as laid down in Railroad v. May, 108 Ill. l. c. 299, hereinbefore quoted, to the effect that the mere fact that the master has a foreman over the gang does not make him responsible for the foreman's negligence, nor does the mere fact that the foreman is sometimes or generally also a colaborer, excuse the master from his negligence, but, "every case, in this respect, must depend upon its circumstances. If the negligence complained of consists of some act done or omitted by one having such authority, which relates to

his duties as a colaborer with those under his control, and which might just as readily have happened with one of them having no such authority, the common master will not be liable. . . . But when the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his colaborers, the master will be liable.''

This then is the state of the law in Illinois.

Of the Missouri cases the following fall within the first class, to-wit, where the vice principal acted as such and not as a colaborer, and hence the master was held liable: Harper v. Railroad, 47 Mo. 567; Gormly v. Vulcan Iron Works, 61 Mo. 492; Whalen v. Centenary Church, 62 Mo. 326; Moore v. Railroad, 85 Mo. 588; Dayharsh v. Railroad, 103 Mo. 570; Russ v. Railroad, 112 Mo. 53; Miller v. Railroad, 109 Mo. 350; Bane v. Irwin, 172 Mo. 306.

On the other hand, the following cases fall within the second class stated, to-wit, where the vice principal acted within the scope of his duty as colaborer, and hence the master was not liable: Lee v. Detroit Bridge and Iron Works, 62 Mo. 565; Card v. Eddy, 129 Mo. 510; Hawk v. Lumber Co., 166 Mo. 121.

There is, therefore, no appreciable difference between the law in Illinois and the law in Missouri upon this subject.

This being the law it remains to apply it to the facts in judgment in this case.

The question then is, did Edwards act as vice principal or as a fellow-servant of the plaintiff? If the former, the master is liable. If the latter, the master is not liable. In solving this question it must be borne in mind that under the Illinois law, the general rule is that whether the injury resulted from his acts in the one capacity or in the other, is a question for the jury to decide from all the circumstances of the case, and that the question is only one of law where the facts are con-

ceded or there is no dispute with reference thereto, and where all reasonable men will agree from the evidence and the legitimate conclusions to be drawn therefrom, that the respresentative, at the time he acted, was acting as a colaborer, and not as a vice principal. [Norton v. Nadebok, 190 Ill. l. c. 599.] Or as it is commonly expressed, did the plaintiff make out a prima facie case for the jury? If he did, the finding of facts by the jury is not open to review in this court, except in respects and under circumstances that are not present in this record.

It is clear that Edwards' principal and primary duties were those of vice principal. It is also clear that whenever he deemed it necessary he lent a helping hand to the men, and it is claimed that while he was so doing he was a fellow-servant. There is no room for doubt that when Edwards arrived upon the scene, he acted in his capacity as vice principal in calling the plaintiff to account for not having backed the wagon into the alley, and in ordering the plaintiff to get up on the wagon, and in assuming control of the situation, and in trying to force the team to back, by striking them in the face, and in ordering Walsh to hitch the "pull-up" team to the end of the wagon tongue, and in ordering the wagon to be seesawed, so as to force it back, and in taking the reins of the "pull-up" team away from Walsh. No one but a master or his *alter ego* could have or would have done these things, and the plaintiff would not have permitted anyone who did not occupy such a relation to so interfere with or assume control of the situation. So far then it is plain that Edwards acted as a vice principal. But at this point the parties "come to the parting of the ways." The plaintiff contends that Edwards did not at this point lay aside his capacity as a vice principal and thereafter act as a colaborer, but that he continued to act as a vice-principal, and that it was his negligence while so acting as a vice principal that caused the injury. On the other hand the defend-

ant contends that from the time Edwards "snapped" the reins of the "pull-up" team away from Walsh, he became a fellow-servant with the plaintiff, and that his negligence in the capacity of fellow-servant caused the injury.   In other words, that the *manual* act thereafter performed by Edwards might just as readily have been performed by anyone else, and if so performed, and performed in the manner that Edwards performed it, would have resulted in the same way.   Or, otherwise stated, that the orders of Edwards given in his capacity of vice principal, including the order to seesaw the team, were lawful and proper orders, and if executed with reasonable care would not have caused any injury to anyone, but if executed negligently would cause injury, and, therefore, the injury was caused by the negligent manner in which the orders were executed and the work done and not in consequence of the orders being improper or negligent orders.   There is no room for doubt that the injury was caused by the horses being pulled around towards the east too far, and so fast and so violently that the front wheel on the left side of the wagon came into contact with the coupling or reach pole, and lifted the load and the bolster of the wagon so high that the king pin, that held the front bolster and the coupling  pole and the forward axle and running gear of the wagon together, was raised out of its place, and the front wheels were separated from the balance of the wagon, and let the front part of the wagon down onto the ground, and it was the negligent manner in which Edwards handled the team that caused this to happen.

Reduced to its last analysis, therefore, the crucial question is, was Edwards acting throughout in his capacity of vice principal, or at the instant he took hold of the reins, did he become, as a matter of law, a fellow-servant, and was his negligence thereafter the negligence of a fellow-servant?   Under the Illinois law it can not

be said that he became a fellow-servant unless the circumstances and the legitimate deductions therefrom are such that reasonable minds can not fairly differ upon the question.

The problem may be solved in this way: The plaintiff in his petition expressly charged that Edwards was acting as a vice principal when he committed the negligence complained of. The defendant charged that he was acting as a colaborer. The plaintiff went to the jury upon instructions that required the jury to find that Edwards was acting as vice principal before they could find for the plaintiff. The defendant's instructions also required the same thing and in addition stated the converse of the rule, that if the jury believed Edwards was acting as a colaborer at the time and with respect to the act that caused the injury, the plaintiff could not recover. The jury found for the plaintiff and the trial judge approved the finding. Thirteen men have, therefore, found from the circumstances and the legitimate inferences to be drawn therefrom, that Edwards' act was the act of a vice principal and not that of a fellow-servant. This court is asked to declare, as a matter of law, that there is no legal basis for such a finding to rest upon. That is, that the circumstances are such that there is no room for reasonable minds to differ about it. It is manifest that the act of negligence complained of and which caused the injury might be done by a master himself, or by his vice principal acting as such, or by a fellow-servant, or by a total stranger, or by anyone who was handling the team. It is also clear that unless Edwards had been clothed with the power of the master he would not have attempted to take command of the situation and that the plaintiff would not have submitted to his interference. This, and the conceded fact that all that Edwards did up to the moment of "snapping" the reins from Walsh was done in his capacity of vice principal, undoubtedly affords some basis for a legitimate deduction that he

acted throughout the whole matter as a vice principal. And this being true, the case was one for the jury, and not a question of law for the court.

It follows that the trial court did not err in over-ruling the demurrers to the evidence.

The defendant also pleads contributory negligence and assumption of risk. But a careful examination of the facts show that there is no substantial basis for the pleas to rest upon. The case was fairly tried, the jury were fully and properly instructed, and there is sub-stantial evidence to support the verdict. The judg-ment of the circuit court is, therefore, affirmed. All concur.