ROBINSON, Respondent, v. ST. LOUIS & SAN FRAN-
CISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, June 23, 1908.

1. **MASTER AND SERVANT: Negligence of Fellow-Servant:
Pleading.** In an action by an employee of a railroad com-
pany for injuries received while assisting to load trucks upon
a flat car, an instruction authorizing a recovery if the injury
was caused by the combined negligence of a fellow-servant and
the foreman or by the negligence of a fellow-servant was
proper where the petition assigned as a ground for recovery
the negligence of the foreman and the fellow-servant.

2. ———: **Safe Place to Work: Pleading: Waiver.** In an ac-
tion by an employee of a railroad company for injuries re-
ceived while assisting to load trucks upon a flat car, where the
petition made two assignments of negligence one in the failure
of the defendant to furnish plaintiff with safe appliances and
the other the negligence of the plaintiff's co-employees, it was
proper to permit a recovery on the failure to furnish said ap-
pliances. The defendant waived its right to object that the
petition stated two causes of action in the same count by
failing to demur to the petition.

3. ———: **Fellow-Servant: Pleading.** In an action by an em-
ployee of a railroad company for injuries received while as-
sisting to load trucks upon a flat car, the petition, which stated
that the injuries were caused by the concurring negligence of
the vice-principal and a fellow-servant, alleging that the vice-
principal or foreman was engaged at the time in performing
the duties of a laborer with the plaintiff and other fellow-ser-
vants, was a proper statement of a cause of action under the
Fellow-Servant Law, section 2875, Annotated Statutes 1906.

4. ———: **Negligence: Fellow-Servant: Accident.** In an action
by an employee of a railroad company for injuries received
while assisting to load trucks upon a flat car, where it was
shown that the trucks had been rendered safe the day previous
and a part of the day on which the accident occurred by scotch-
ing and that the accident causing the injuries was caused by
the displacement of the scotches, it would not be said that the
injury was a pure accident, but it was proper to infer that the
misplacing of the scotches was due to the negligence of the
man who handled them.

5. ———: **Safe Appliances: Evidence: Usual Method.** In an
action by an employee of a railroad company for injuries re-
ceived while assisting to load trucks upon a flat car, evidence

Robinson v. Railroad.

to show that certain machinery had been ordered for the purpose and that it was safer than the method used when the accident took place, was proper where it appeared that such machinery was in common use among railroad companies.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*W. F. Evans* and *Moses Whybark* for appellant.

(1) The plaintiff by his allegation made his petition clear by declaring his intent to proceed against the defendant for failure to furnish him reasonably safe appliances to do his work. Butts v. Long, 94 Mo. App. 687; Sidway v. Land & Live Stock Co., 163 Mo. 342; Stillwell v. Hand, 97 Mo. 579; Sexton v. Railroad, 98 Mo. App. 494; Loehr v. Murphy, 45 Mo. App. 519. (2) The plaintiff is bound by the allegations of his petition, and although the petition may contain unnecessary averments, yet, as long as the petition stands unamended, he is bound thereby. Bruce v. Simms, 34 Mo. 246; Bensieck v. Cook, 110 Mo. 182; Weil v. Posten, 77 Mo. 287. (3) The Fellow-Servant Law does not apply to an accident arising from the master's failure to furnish safe instrumentalities. This was a common law duty, and the servant always had his action against his master for causes arising from its breach. Jackson v. Mining Co., 106 Mo. App. 441. His right as fellow-servant to recover is statutory, and given to him where none existed before, and to maintain that action he must bring his case within the statute. But giving the plaintiff the full benefit of all the allegations in the petition, he did not undertake to state a cause of action for negligence under the Fellow-Servant Law; and therefore, the court erred in instructing the jury at all on that feature of the case. R. S. 1899, secs. 2873, 2875. (4) The said instructions were erroneous. Under the issues presented on this phase of the case, plaintiff was not warranted in going

to the jury on a case under the Fellow-Servant Law, and
the court erred in giving the instructions numbered 1,
2 and 9, because they embrace issues not involved in the
petition. Roscoe v. Railroad, 202 Mo. 576; Shereman v.
Transit Co., 103 Mo. App. 515. No such issue was ten-
dered by the pleadings, and the rule is well settled that
issues can not be raised or disposed of by instructions
that are not made by the pleadings. Koenig v. Railroad,
173 Mo. 724; Nugent v. Milling Co., 131 Mo. 257; Mer-
rett v. Poulter, 76 Mo. 240; Maffatt v. Conklin, 35 Mo.
435. Issues cannot be tendered by the evidence in a
case. State ex rel. v. Land Co., 161 Mo. 673. (5) The
court erred in permitting the plaintiff to show, by the
witness D. O. Cathay, that machinery had been ordered
to load the trucks before the day of the injury, and that
Cathay and Martin were authorized to rig a wire cable
and load with an engine; and loading by derrick was a
safe way; and further, as to different methods of loading
trucks than that employed at the time of the accident.
The court also erred in permitting witness, Clint Jones,
to testify to same effect. This testimony was clearly in-
competent. The master is only bound to use ordinary
care in supplying reasonably safe tools and appliances to
his servants; he does not insure against the danger of
using such tools; but if he fails to supply reasonably
safe instrumentalities to his servants to do his work,
he is guilty of negligence for that neglect of duty, but no
other. He is not bound to use the best tools and newest
appliances obtainable, but if he supplies his servants
with instrumentalities reasonably safe to do the work
the servant is required to perform, he has discharged his
duty. Minner v. Railroad, 167 Mo. 119; Chrismer v.
Telephone Co., 194 Mo. 208, L. R. A. (N. S.) 492; Havi-
land v. Railroad, 172 Mo. 112; Holmes v. Brandenbaugh,
172 Mo. 64; Blundell v. Mfg. Co., 189 Mo. 558; Purcell v.
Shoe Co., 187 Mo. 285; Goransson v. Mfg. Co., 186 Mo.
306; Mathis v. Stock Yards, 185 Mo. 434; Livengood v.

Lead and Zinc Co., 179 Mo. 238; Beebe v. Transit Co. (Mo.), 103 S. W. 1024; Harrington v. Railroad, 104 Mo. App. 670; Beckman v. Brewing Co., 98 Mo. App. 560; Blanton v. Dold, 109 Mo. 64; Bradley v. Railroad, 138 Mo. 302; Gratis v. Railroad, 153 Mo. 403; Kehler v. Schwenk, 13 L. R. A. 374.

*Everett Reeves* for respondent.

(1)   The allegations of negligence of plaintiff's fellow-servants and foreman were sufficient; especially so, since no timely objection to the petition was made by demurrer or motion and the only objection ever made was a general objection to the introduction of testimony. Benham v. Taylor, 66 Mo. App. 308; Foster v. Railroad, 115 Mo. 165.   Young v. Iron Co., 103 Mo. 324; Powell v. Sherwood, 162 Mo. 605; Wills v. Railroad, 44 Mo. App. 51; Shuler v. Railroad, 87 Mo. App. 618; Dakan v. Mercantile Co., 197 Mo. 238.   Moreover, it is no valid objection to this part of petition because it charges both negligence of the foreman and fellow-servants.   R. S. 1899, sec. 2873.   Jordan v. Transit Co., 202 Mo. 418; Young v. Iron Co., 103 Mo. 324; Rigsby v. Supply Co., 115 Mo. App. 297; Fogerty v. Transfer Co., 180 Mo. 490; Ruder v. Lime Co., 107 S. W. (Mo. App.) 1016.

(2)   Appellant earnestly urged that the negligence charged in the petition is not sufficient to bring the case within the Fellow-Servant Law. R. S. 1899, sec. 2873, 2875.   And, in this connection, it is maintained that, since the allegation of the petition was sufficient to hold defendant liable for the negligence of the foreman, plaintiff could not recover under the Fellow-Servant act.   But such is not the law as we understand it.   If no timely objection is made to the petition by demurrer or otherwise on account of commingling causes of action in same count, one may properly rely in the same count on common law and statutory negligence, or on two or more statutory grounds of negligence in the same count,

so long as the violated duties produced the one injury, as in this case. Fadley v. Smith, 23 Mo. App. 87; White v. Railroad, 202 Mo. 539; Jordan v. Transit Co., 202 Mo. 418.

BLAND, P. J.—Plaintiff, on January 6, 1906, was injured while assisting a crew of men to load trucks on a flat car for defendant at Hayti, Missouri. The action is to recover for the resulting damages. The petition is in one count but sets forth two distinct assignments of negligence, one of commission as follows:

"While plaintiff was working as a common laborer, and employed by defendant, engaged in the work of operating its railroad in Pemiscot county, Missouri, under the orders, direction and immediate supervision of defendant's foreman, or overseer, and while in the line of his duty, he, with other employees of defendant, were engaged in loading large and heavy trucks, or parts of cars, on a flat and open car, in Hayti, in said county; the said car being on one of defendant's switch tracks in the corporate limits of Hayti.

"That the trucks were of iron, or steel, and weighed several thousand pounds each, and the mode adopted for loading them was to place the end of two rails, or skids, some twenty feet in length, on the end of the flat car, which was about five feet in height, and the other ends of the skids on the rails of the railroad track; then rolling, pushing and pulling the trucks upon and along the skids onto the flat car.

"While he was assisting his co-employees in loading the trucks in that way, and under the supervision of his foreman, who was the vice-principal of defendant, and his co-employees, the defendant's said foreman and vice-principal and co-employees and colaborers negligently, carelessly and recklessly permitted and caused one of the trucks to fall and roll against and upon plaintiff, inflicting serious and permanent injuries on his left

breast, left side and back, and ribs of his left breast, and left shoulder and collar bone; thereby causing his left arm and shoulder to become permanently stiff and useless.

"That at the moment he was injured he was between two skids immediately behind the truck, which had been rolled or shoved up the skids to about their middle, and he was where it was his duty to be, and he was in the act of catching or fastening a hook to the truck for the purpose of drawing and pulling it onto the flat car.

"Blocks or scotches had been placed on the skids immediately behind the wheels of the trucks to prevent it from rolling back or falling; and the said vice-principal and one or more of plaintiff's colaborers, or fellow-servants, were, at the moment the plaintiff was in the act of fastening the hook, holding the scotches in their proper places behind the wheels of the truck, as it was their duty to do, when suddenly and without a warning to, or knowledge of, plaintiff, the vice-principal and co-laborers carelessly removed the scotches from their proper places, and negligently permitted them to move and fall from their proper position behind the wheels of the truck, and thereby causing the truck to fall and roll upon plaintiff, and inflicting upon him the said injuries."

The other assignment of negligence (of omission) is as follows:

"That it was the duty of defendant to furnish plaintiff and his co-employees, with reasonably safe, sufficient and proper machinery to load the trucks, but it neglected to do so, and thereby caused him to receive his injuries; that the ordinary and customary way and manner of loading these trucks on flat cars was by the use of a derrick or wrecker, and this renders the loading of trucks reasonably safe; while to so load without a wrecker renders said labor and work very dangerous and unsafe; that defendant, and its vice-principal, negli-

gently and recklessly ordered and required plaintiff, and his colaborers, to so load, or attempt to load, said trucks without thus providing them with a wrecker, thereby causing the injuries aforesaid. That the injuries complained of were not within the ordinary risk of his employment; that the dangers incident to the loading of said trucks in the way and manner adopted by the defendant on this occasion were known to the defendant, but were wholly unknown to plaintiff; and plaintiff, when injured, was exercising ordinary care."

The answer was a general denial and a plea of contributory negligence.

On the threshold of the trial and at the close of plaintiff's evidence, defendant moved that plaintiff be required to elect upon which cause of action or assignment of negligence he would rely. The court overruled the motions.

Plaintiff was employed by defendant as a car repairer and blacksmith and had never loaded trucks until the morning of the day he was injured. Pat Murray, who was a section foreman, had charge of loading the trucks, and plaintiff and one or two other car repair men were ordered by the boss to assist the section gang. Defendant's statement of the facts, with the corrections and additions to follow, will give a correct history of the case. The statement is as follows:

"These trucks consisted of two pair of carwheels of standard gauge four feet eight and one-half inches, weighing from three to five hundred pounds. The method employed to load these trucks was two skids, about 6x8, and about twenty feet in length, bolted together at each end in the middle with rods; one end of the skids was placed on the end of the car, and the other down on the track, and fit the track. A block and tackle was fastened on top of the flat car, and a rope with hooks at the end hooked over the axle, and by means of the block and tackle, the trucks were pulled along the

skids up on the car by men on the car; and as they would pull the trucks they would scotch them, and then catch a new hold and scotch and pull again.

"Pat Murray and Charles Martin were on the ground attending to the scotching; Murray on one side of the skids and Martin on the other, and plaintiff and George Lawhorn were also on the ground. Keenan was on the ground between the trucks and the end of the flat car attending to placing the hook around the axle; the others were up on the flat car pulling the trucks up the skids by means of the block and tackle.

"The scotches were of 2x4 pieces of oak and a foot and a half or two feet long, and were sound; and they used them in loading the trucks before and after the injury. They had loaded ten or twelve pairs of trucks the day before plaintiff was injured, and at least one pair was loaded before he got hurt, and they were all loaded on the skids in the same manner. The scotches were placed behind the rear wheels of the trucks and right under the flange of the wheels, slightly angling, so that they would catch squarely against the wheel, and this plan of scotching was pursued before and after the injury; these skids were used at Hayti all the time. As they were pulling up a pair of trucks in this manner, Keenan, who was on the ground between the trucks and the flat car attending to the hooks, made a suggestion that they take the hooks off the axle and fasten them underneath on the sand board, so the trucks would pull up easier. They generally agreed that this change was advisable and concluded to try it. When this suggestion was made Keenan was at his place, and Pat Murray was standing on one side of the skids and Charles Martin on the other side, at their places, attending to the scotches, and plaintiff and Lawhorn were on the ground, at their places; Murray said they would try the change. The sand board was between the two pair of wheels of the trucks and down below them, and hung around the bol-

ster between the wheels and underneath them, being only a short distance between the sand board and the track and ground, between the trucks. While Keenan was trying to fasten the hook to the sand board, Murray said: 'Boys, take hold and see if you cannot help fasten the hook,' or words to that effect. Lawhorn at once went in behind the trucks to help Keenan fasten the hook to the sand board and plaintiff immediately followed him and both of them were reaching for the hook to help Keenan, and while in that act plaintiff put his leg over the axle and between the axle and the sand board, and was reaching for the hook, and while in this position the scotches slipped, or gave way or the wheels rolled over them, and the trucks rolled back on the skids over both plaintiff and Lawhorn; Lawhorn was slightly injured, but plaintiff quite seriously. The skids were just the width of the truck, and the same gauge as the railroad track and made to load trucks. They all wanted to get done and seemed to be in a hurry. They finished loading the trucks the day of the accident and continued in the work as before. No one in particular was told by Murray to go in to assist Keenan, but Lawhorn and plaintiff were the only ones on the ground besides Murray and Martin; the others, seven or eight in number, were on the car pulling the trucks up the skids by means of the block and tackle. After plaintiff was injured he was taken to his house in Hayti and treated for his injuries, and his collar bone, and other fractures, were set by Doctor Jones, but he removed the bandages himself shortly after they were fixed. He was hurt on the sixth day of January, 1906; on Sunday evening after the injury he was sent to the hospital at Springfield, and was there seventeen days, and voluntarily left, as he states: 'I just told them it is nothing for me to do but suffer, and I can suffer at home with my family as well as here, and I am going home.' They told him that they would rather he would not leave, but he declined to

stay and told them he would go home, and the doctor told him to keep the bandages on three weeks, and he came home. The plaintiff himself testified that he was, by profession, a physician; that he graduated at the Barnes Medical College and Marion Simms College on March 16, 1885, and practiced medicine at Fancy Farm, Kentucky, for eight years; for the first six years he did a good business; 'and got to fooling in patents and lost money.' Part of the patents he got up was a ball-bearing buggy box; 'one was a buggy fan to go on top of a buggy to keep a fellow cool when he was riding along;' that did not go very well, and he quit practicing. Murray was section foreman, but was not the foreman of plaintiff, but Lawhorn and several others were section men under Murray. Gibson was plaintiff's foreman, and also the foreman of Keenan and Martin; they worked in the mechanical department, and in Gibson's absence plaintiff says as to Martin, 'Thinks they made him a sort of a straw-boss to say what to do in Mr. Gibson's absence.' Martin's crew went down and assisted in loading the trucks at Murray's request."

Plaintiff's evidence tends to show the trucks were loaded under the supervision of Murray and that plaintiff and the other two men taken from Gibson's repair crew were, for the time being, a part of Murray's crew. In respect to his injuries, plaintiff testified as follows:

"Q. State if you were suffering at that time? A. It was about all I could do to live.

"Q. How were you suffering? What happened to you—what portion of the body? A. I couldn't get my breath. I was mashed in here (pointing).

"Q. In where? A. Around my lungs and heart.

"Q. Which side? A. On the left side.

"Q. How did it affect your ribs? A. It seemed to pull the bone blade, bone—scapula off from the shoulder, tearing it loose and seemed to crack some of the ribs underneath. At least for three or four weeks I couldn't hardly get my breath on account of that hurt-

ing so bad through there, and there was two ribs, I think, fractured down here.

"Q.  On the left side?  A.  Yes, sir.

"Q.  Three or four ribs fractured on the left side. When you say fractured, you mean broken?  A.  No, sir, kind of a green stick fracture.  I don't know that they came in two, but they all popped.  That caused them to go in when the shoulder came in.

"Q.  How long did you remain at home before you went away?  A.  That was done on Saturday morning, and I was carried away Sunday evening, I think.

"Q.  Where were you taken to?  A.  Taken to Springfield.

"Q.  Hospital?  A.  Yes, sir, railroad hospital.

"Q.  St. Louis and San Francisco Railroad Hospital?  A.  Yes, sir.

"Q.  How long were you confined to your bed after this injury?  A.  Well, after I went to the hospital I was up and down all the time for seventeen days.  After they bandaged me up I could really stand up better than I could lay down.

"Q.  How long did you stay at the hospital?  A. I stayed there seventeen days.

"Q.  State whether you suffered much or little during all that time.  A.  I suffered considerably all the time.

"Q.  Do you still suffer?  A.  Yes, sir, I suffer more or less all the time.  I can't lay on this side any more.  I either have to sit propped up in the bed to sleep or lie on my right side.

"Q.  You say you continually suffer now?  A. Yes, sir; and the greatest trouble is that I am sorter losing the motion and use of my arm; it has a queer feeling in the arm all the time.

"Q.  Is that arm now in that particular getting better or worse?  A.  It is gradually getting worse.

"Q.  What was your weight and the condition of

your health at the time of this injury?    A.   I was in good health then.

"Q.   How much did you weigh?    A.   About one hundred and fifty or one hundred and fifty-five; that used to be my weight.

"Q.   What is the condition of your health now as compared with that time?    A.   Well, I am in tolerably fair health except this trouble.   .   .   .

"Q.   What is the condition of your arm at the present time—or shoulder?    A.   Well, it had growed back all right, no more than the joint won't let it work up higher.

"Q.   Indicate to the jury as high as you can reach your arm?    A.   That is as high as I can get it (indicating).

"Q.   State whether or not it pains you to raise it that high?    A.   Yes, sir, it hurts.

"Q.   It does pain you?    A.   Yes, sir, I can hold my arm to me this way and use it pretty well, but when I get it away from me I haven't much strength in it.

"Q.   State to the jury whether or not you can raise your elbow any higher  than on a level with your shoulder?    A.   No, sir, I can't.   .   .   .

"Q.   State to the jury whether or not you can lift the arm up to your head?    A.   No, sir, I can't do that.

"Q.   State to the jury what is the condition of the locomotion of that arm back in front of your body and behind you?    A.   I can't put my coat on.   I have no motion in the shoulder to throw my coat up.

"Q.   State to the jury whether or not you can now get on and off your clothes?    A.   No, sir, I haven't been able to do that by myself.   I have to have help to put on my shirt and my coat.

"Q.   State whether or not that locomotion or the use of that arm is getting better. or worse?.    A.   No, sir, it is not getting better."

Over defendant's objections, plaintiff was permitted to show that if a cable rope had been rigged to pull the trucks on the cars with an engine, it would have been a safer way than to pull them up by hand power, but that the easiest and safest way to load them would have been with a derrick.

The jury found for plaintiff and assessed his damages at $5,000. Plaintiff remitted $500 of the damages assessed, and judgment was rendered for him for $4,500, from which defendant appealed, having first filed a timely motion for new trial and in arrest of judgment which the court overruled.

Plaintiff's second instruction is as follows:

"If the jury believe from the evidence that on the — day of January, 1906, plaintiff was in the employ of defendant; that at said time while so employed and while in the line of duty as such and under the direction of defendant's foreman, he, together with other employees and colaborers, was engaged in loading or attempting to load certain heavy trucks onto a flat car; that he was at his place of duty behind said trucks, and that one or more of said colaborers, or foreman negligently and carelessly and without warning to or knowledge of plaintiff, removed the scotches from their proper places behind the wheels of said trucks, or negligently and carelessly permitted said scotches to move and fall from their proper places, and thereby negligently and carelessly permitted or caused said trucks to fall and roll against and upon plaintiff's body, inflicting the injuries complained of, then the verdict should be for the plaintiff, unless the jury further believe that plaintiff was guilty of negligence contributing directly to the injury. By the term 'negligence,' as used in these instructions, is meant the want of that degree of care that an ordinarily prudent person would have exercised under the same or similar circumstances."

1.     Defendant contends that this instruction submits the question of recovery on the fact that plaintiff was ordered into a dangerous position by his foreman, and while in that position was injured by the carelessness and negligence of the foreman, in permitting the truck to roll back upon him.     The instruction predicates plaintiff's right to recover upon these facts: first, if he was in the employ of the railroad company; second, if in the performance of his duty, he, with others, by direction of his foreman, was engaged in loading trucks on a flat car; third, if while at his place of duty behind the trucks, one or more of his colaborers or a colaborer and the foreman negligently and carelessly permitted or caused the car trucks to fall and roll upon him and was not himself guilty of negligence, he is entitled to recover.     We think the instruction is clearly drawn under the railroad fellow-servant act and authorizes a recovery if the injury was caused either by the negligence of a fellow-servant, or by the combined negligence of both a fellow-servant and the foreman, and is not an instruction authorizing a recovery for the carelessness of the foreman alone, and is within the scope of the first assignment of negligence in the petition.

2.     Plaintiff's fourth instruction is as follows:

"It is the duty of the defendant to use ordinary care and diligence in selecting and furnishing to its employees reasonably safe and suitable machinery, tools and appliances with which to carry on the business and work of defendant.     So, if the jury believe from the evidence that on the —— day of January, 1906, plaintiff was in the employ of defendant; that while so employed and in the line of his duty as such employee and under the direction of defendant's section boss or foreman, he received the injuries complained of; that said injuries resulted from undertaking or attempting to load upon a flat car certain heavy trucks by the means and use of skids, blocks or scotches, ropes, pulleys and hooks;

that said means, tools and appliances were not reasonably safe, sufficient and suitable for loading said trucks, and which injury might have been prevented by ordinary care and precaution on the part of defendant in selecting and furnishing reasonably safe, sufficient and suitable tools, machinery and appliances; that defendant, through its agents, knew that the means, tools and appliances used were unsafe, unsuitable or insufficient, or might have known the same by the exercise of reasonable care and diligence, then the jury will find for plaintiff, if they believe from the evidence that he was, at the time of said injuries, exercising ordinary care and prudence, and did not know, nor by the exercise of ordinary care could have known, that the means, tools and appliances used were unsafe, unsuitable and insufficient, and that the exposure to danger on account thereof was increased."

This instruction predicates plaintiff's right of recovery on the second assignment of negligence in the petition, that is, the failure of defendant to furnish plaintiff with reasonably safe appliances with which to do the work he was required to perform. Plaintiff's instruction No. 6 is a repetition of his instruction No. 4, in a condensed form. His other instructions are on the measure of damages and are counterparts of defendant's on contributory negligence, so plaintiff's case was submitted to the jury on the two assignments of error set forth in the petition and on evidence which conduced to prove both. If it be conceded that there are two causes of action stated in the one count of the petition, they are not so commingled as to mislead or confuse, but are set forth in separate paragraphs, and the defect (if there is one) appeared upon the face of the petition and should have been taken advantage of by demurrer (sec. 598, Mo. Ann. St. 1906) ; for failure to so take advantage, defendant waived the defect (sec. 602, Mo. Ann. St. 1906.)    [Boyd v. Transit Co., 108 Mo. App. 303, 83

S. W. 287; House v. Lowell, 45 Mo. 381; Thompson v. School District, 71 Mo. 495; Blair v. Railroad, 89 Mo. 383.]

3. It is contended that the duty of the master to furnish his servant safe appliances with which to do his work is a common law duty and hence the Fellow-Servant Law does not apply. There was no attempt to apply it to that phase of the case.

4. It is further contended that the first paragraph of the petition does not state a cause of action under the Fellow-Servant Law, for the reason Murray was a foreman. The act (sec. 2875, Ann. St. Mo. 1906) provides:

"That all persons who are engaged in the common service of such railroad corporation, and who while so engaged, are working together at the same time and place, to a common purpose of same grade, neither of such persons being entrusted by such corporation with any superintendence or control over their fellow employees, are fellow-servants with each other: *Provided,* that nothing herein contained shall be so construed as to make any agent or servant of such corporation in the service of such corporation a fellow-servant with any other agent or servant of such corporation engaged in any other department or service of such corporation."

The evidence shows that though Murray was foreman of the section men helping to load the trucks, it does not show that he was plaintiff's foreman but that in loading the trucks, and at the time of the injury, he was working as a colaborer with the rest of the men, and the appellation of foreman, applied to him by the witnesses, does not make him one, or change his character from that of a colaborer to a vice-principal. It is true, the petition alleges that plaintiff was put to work loading the trucks by direction of and under the immediate supervision of defendant's foreman, or overseer. The negligence charged is charged as the joint or concurring negligence of both the vice-principal and

a fellow-servant and is, in substance, that the vice-principal and a fellow-servant of plaintiff, while he was under the trucks to help adjust the hooks to the sand board, were holding the scotches in their proper places behind the wheels of the trucks, when suddenly and without warning they, the vice-principal and colaborers, carelessly removed the scotches from their proper places, etc., causing the trucks to fall or roll upon plaintiff. Thus it appears by affirmative allegations of the petition that while Murray is called a vice-principal, he is in law but a fellow-servant, engaged at the time of the injury in the performance of the duties of a laborer. It is the act and not the rank of the vice-principal which determines whether two employees are fellow-servants (Bane v. Irwin, 172 Mo. 306, 72 S. W. 522), and where the negligent act complained of was not done in the exercise of representative authority, but in the capacity of a colaborer at the time with those under his control, his act is that of a fellow-servant. [Fogarty v. St. Louis Transfer Co., 180 Mo. 490, 79 S. W. 664; Bien v. St. Louis Transit Co., 108 Mo. App. 399, 83 S. W. 986; Stephens v. Lumber Co., 110 Mo. App. 398, 86 S. W. 481; Rigsby v. Oil Well Supply Co., 115 Mo. App. l. c. 314, 91 S. W. 460, and cases cited.]

5.   It is contended that defendant's employees departed from a safe way of loading the trucks and undertook to adopt an unsafe one, resulting in plaintiff's injury.   There is no evidence to sustain this contention. The injury did not result directly from the effort to change the hooks from the axles of the truck to the sand board but was caused by the failure of Murray and Martin to hold their scotches in place.

6.   The refusal of the following instruction asked by defendant is assigned as error, to-wit:

"6.   You are further instructed that if you believe from the evidence that the block used for scotching the trucks on the skids were reasonably safe for the purpose,

and at the time of the injury they were placed behind the trucks in the usual manner, but after the hooks had been removed from the axle the trucks either ran over the blocks and down the skids, or the skids slipped from behind the trucks, and they ran down the skids on plaintiff, and injured him, then the injury was the result of accident, and the plaintiff cannot recover."

The evidence is very meager as to how the trucks got away from Murray and Martin. They were handling the scotches but neither of them could or would tell what happened to cause the trucks to run down or fall on plaintiff. The skids were securely fastened together; they did not spring apart and let the trucks down; the scotches were used successfully all the day previous to the accident in loading trucks and also all the day afterwards and proved sufficient to hold trucks on the skids, therefore, there is no room for a reasonable inference that plaintiff's injury resulted from a purely accidental cause; on the contrary, the only reasonable inference to be drawn from the facts and circumstances in evidence, is that the accident was the result of the negligence of Murray or Martin, or of both, in handling the scotches. If this view of the facts is correct, there is no evidence in support of the instruction and no error was committed by the court in refusing to give it.

7. It is insisted that the court erred in permitting plaintiff to show that machinery, in the shape of a wire rope and blocks and pulleys, to be operated by an engine, had been ordered to load the trucks before the day of the accident; and also erred in permitting plaintiff to show that this mode of loading trucks would have been safer and easier than by hand power, and erred in permitting plaintiff to prove that the trucks could have been loaded much easier and with greater safety than by the means employed by defendant. In support of this contention, defendant's learned counsel makes the following quotation from Chrismer v. Bell Telephone Company, 194

Mo. 1. c. 208-9, 92 S. W. 378, which is there quoted from Titus v. Railroad, 136 Pa. St. 618, to-wit: "Some employments are essentially hazardous,  . . .  and it by no means follows that an employer is liable 'because a particular accident might have been prevented by some special device or precaution not in common use.' All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for, in regard to the style or implement or nature of the mode of performance of any work, 'reasonably safe' means safe according to the usages and habits and ordinary risks of the business. Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set up a standard which shall, in effect, dictate the customs or control the business of the community." Most of this paragraph was also quoted in Minnier v. Railroad, 167 Mo. 119-20, 66 S. W. 1070.

In Blundell v. Mfg. Co., 189 Mo. 1. c. 558-9, 88 S. W. 103, it is said: "The master is entitled to conduct his business in his own way and with such appliances as he sees fit, subject to the qualification that the appliance

shall be reasonably safe, considering the character of the work to be done." The same doctrine is stated in the case of Holmes v. Brandenbaugh, 172 Mo. l. c. 64, 72 S. W. 550.

As said in the Pennsylvania case, "the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business;" and if there was clear and uncontradicted evidence that the method and appliances employed by defendant to load trucks on flat cars was the ordinary method and the appliances the customary ones employed by railroad companies for such work, it would have been the duty of the trial judge to have withdrawn the second assignment of negligence from the jury. But the evidence shows the usual methods employed by other railroad companies to load trucks was either with a cable and engine or with a derrick. Only one witness (Jones) testified that one time, at Milan, Tenn., he saw trucks loaded in the way employed by defendant. Moreover, the evidence tends to show the method and machinery employed by defendant was dangerous. The evidence objected to, we think, tends to prove defendant's failure to employ the method and appliances in common use among railroad companies and that in their stead it employed more dangerous ones, and was admissible as tending to prove negligence. [Beard v. American Car Co., 72 Mo. App. 583; Monahan v. K. C. Clay and Coal Co., 58 Mo. App. l. c. 74; Spencer v. Bruner, 103 S. W. 578.]

8. It is contended that the verdict is so excessive as to demonstrate that the jury was influenced by prejudice or passion. Dr. B. T. Jones, the defendant company's physician, testified that he made a very thorough examination of plaintiff the day he was injured and discovered no other serious injuries than a fracture of the collar bone; that he set that properly and so adjusted the bandages as to hold it in place, but on his return the next morning he found the bandages slit and the frac-

tured collar bone out of place. Plaintiff admitted he had the bandages slit to relieve his arm of pain. Dr. A. R. Cowan testified that he had known the plaintiff, Dr. Robinson, and that he had been in his employ as a druggist for about two months and appeared to be unable to do everything necessary to be done in a drug store, couldn't get his arm up to reach the bottles on the shelves, nor sweep, nor things of that kind; that he was crippled in his left shoulder. That he made no particular examination of plaintiff until the day he testified in this case, and discovered on this examination, that his collar bone was fractured; also the scapula, or shoulder blade had been broken; that he examined his breast and side and found no other injuries, but he had been complaining of his side ever since he was in his employ, and that in his opinion the injury to plaintiff's collar bone and shoulder blade are permanent.

Plaintiff's testimony in respect to his injuries is set out in the statement of facts. The evidence shows that plaintiff did not use proper care to effect his recovery, but defendant got the benefit of this evidence by instruction No. 7 given at its request. Forty-five hundred dollars is not excessive compensation for plaintiff's injuries, in the light of his evidence and that of Dr. Cowan. The substantial loss of the use of an arm, to be broken in health at the age of forty years, to be unable to dress oneself, to suffer constant physical pain with no hope of relief, is an intolerable condition.

Discovering no reversible error, the judgment is affirmed. All concur.