W. T. MISENHELTER, Appellant, v. GERONIMO LEAD AND ZINC COMPANY, Respondent.

Springfield Court of Appeals, April 2, 1917.

1. MASTER AND SERVANT: Injuries: Fellow Servants: Vice Principal: Review of Evidence. Action for personal injuries occasioned by particles of dirt and stone entering a miner's eye as a result of another servant striking a rock with a hammer. Evidence examined and reviewed. *Held,* that although plaintiff was in charge of the work in the drift where the parties were working he was not a vice principal over the one who struck the rock but that they were fellow servants engaged in a common task.

2. ——: ——: ——: ——: Dual Capacity Doctrine. Although a foreman or vice principal may have general charge and control of the men, yet where he is performing the same character of work as are the men under his control and he negligently injures one of them, he is considered a fellow servant for the purpose of relieving the master from liability in cases where there is no statute abolishing the common-law rule.

3. ——: ——: Release: When Obtained Fraudulently: Jury Question. Action for personal injuries, defendant claiming that plaintiff had signed a complete release. Evidence examined and con-

sidered sufficient to put to the jury the issue whether the claim agent of the employer had fraudulently misrepresented to plaintiff the character and contents of the release signed by the plaintiff whose eye was injured and bandaged so that he could not read for himself the paper which he signed.

Appeal from Jasper County Circuit Court, Division Number Two.—*Hon. David E. Blair*, Judge.

REVERSED AND REMANDED.

*Owen & Davis* for appellant.

*M. R. Lively* for respondent.

FARRINGTON, J.—This appeal results from the action of the circuit court in sustaining a demurrer to plaintiff's evidence. Plaintiff's eye was injured when a servant named Haley in defendant's mine struck a boulder with a hammer causing particles of rock and dirt to fly in plaintiff's face. Defendant operated a mine producing zinc ore. Plaintiff was engaged in putting in spiling (timbers to support the roof of the drift) and Haley was helping him. They were standing on a timbering board pushing the spiling in position. Haley stooped and picked up a hammer they used in driving the spiling up and struck the boulder with the result stated. The boulder was four or five feet from plaintiff's face and plaintiff testifies that he did not know Haley was going to hit it. Plaintiff had worked in mines off and on for fourteen years. He was hurt on Friday and had just gone to work for defendant the previous Monday. Plaintiff was the only witness who testified, and we quote the follow from his cross-examination: "Q. Were you in charge of the drift? A. Yes, sir. I was. Q. And directed the work there? A. Yes, sir. Q. And Haley was under your directions? A. Yes, sir. Q. And when you got ready to put up your spiling, you told Haley what to do? A. He got hold of the spiling and we put it up. Q. You directed Mr. Haley what to do? A. Yes, sir. We had part of the spiling up and was putting up this spiling.

This spiling was about ten feet long . . . Q. And to get this spiling up, you had to remove the boulders and rock in the wall and roof to get them in their proper place? A. We don't take no boulders out of the side of the drift. Q. In order to put the spiling in, you have to move the boulders out of the roof or wall, whenever they are in the way? A. Not out of the side. . . . Q. If there happens to be a rock or a boulder or any obstruction in placing that spiling where you want it, you get it out of there? A. Yes, sir. Q. What is the customary way of getting it out? A. If you can't take it out with a pick, you take a hammer and try to break it off. Q. At the time you were working on this spiling, it was very near the side of the roof up close to the wall, wasn't it? A. It was not. It was in the middle of the drift about center ways of the cap. The drift was twelve feet wide. Q. Where was the boulder that you claim was struck with reference to straight from you? A. Right up in front of me, right alongside of the spiling. Right off to the right of the spiling. Q. So this boulder was six feet away from you, on the side of the wall? How many feet above your head? . A. We was up on the timbering boards and the boulder wasn't in the side of the wall. It was right in the face, hanging down out of the roof. Q. Right where you were trying to put in the spiling? A. Not in the way of the spiling at all. . . . Q. Did you tell him before that to break out the boulders and to get them out of the way; that it was necessary to put in the spiling? A. No, sir. Q. How did you direct him to do that? A. If I seen a boulder in the road, I done that myself. I done the picking out myself for the spiling. Q. He never did that? A. If he wanted to pick out to one side, he did. Q. Did you tell him to help you when it was necessary to remove the boulders? A. Yes, if it was necessary but that time I never asked him.''

The evidence clearly shows that plaintiff and Haley were both servants of the defendant and were at the time of plaintiffs injury engaged in the common purpose and manual performance of putting up the spiling in this drift, and that their respective duties—so far as the act

of putting up the spiling was concerned—was of the same character.

We have quoted all the testimony that is helpful in determing whether plaintiff was Haley's vice-principal or whether they were fellow-servants at the time.

Respondent selects the first few questions and answers from the foregoing cross-examination of the plaintiff and contends that the evidence conclusively shows plaintiff to have been Haley's vice-principal at the time of the injury. Respondent is taking the *rank* of the plaintiff as his test instead of the *character of the act,* and in so doing is in conflict with the rule stated in Bane v. Irwin, 172 Mo. 1. c. 317, 72 S. W. 522, which has been reiterated in case after case in this State. It is not enough to avoid liability in this case that plaintiff was ''in charge of the drift.'' It is clear from plaintiff's testimony that he did not give Haley any order or direction to take down the rock that Haley struck and did not know Haley was going to strike it; that the boulder was not in the way of the spiling at all; that plaintiff did not tell Haley to get any boulders out of the way. Plaintiff and Haley, under the evidence, were clearly co-laborers or fellow-servants at the time of the injury and it is for the jury to say whether the act of Haley in striking the boulder was negligence. Respondent in its brief declares that the dual capacity doctrine is never used or invoked for the benefit of the vice-principal but is only permitted for the benefit of a fellow-servant injured by the negligence of the vice-principal in the dual service capacity. It was certainly invoked for the benefit of the vice-principal in the case of Vannest v. M., K. & T. Ry. Co., 181 Mo. App. 373, 168 S. W. 782. It is true that most of the cases that arise where this question is discussed are those in which the servant injured is not a vice-principal but was injured by the negligence of the vice-principal, but no good reason appears why the vice-principal should not be permitted to show by the character of the act that he was at the time of his injury a fellow-servant of the servant whose negligence was the proximate cause of his injury.

195 M. A.—34

In Missouri the dual capacity doctrine obtains holding that although a foreman or vice-principal may have general charge and control of the men yet where he is performing the same character of work as are the men under his control and he negligently injures one of them he is declared a fellow-servant for the purpose of relieving the liability of the master in cases where there is no statute abolishing the common-law rule. [Fogarty v. St. Louis Transfer Co., 180 Mo. App. 490, 79 S. W. 664; Robinson v. Railroad, 133 Mo. App. 101, 112 S. W. 730; Boonshaft v. Klauber (Mo. App.), 190 S. W. 616; 5 Labatt's Master & Servant (2 Ed.), sec. 1784 d.]

The following cases are those where a statute has been passed commonly known as the fellow-servant act which makes the master liable for injury to one of its servants caused by the negligence of a fellow-servant where the injured party was at the time a vice-principal yet was performing labor or work which made him a fellow-servant of the negligent employee. [Pittsburgh, C., C. & St. L. Ry. Co. v. Collins (Ind.), 71 N. E. 661; s. c., 80 N. E. 415; Texas & N. O. R Co. v. Walton (Tex. App.), 104 S. W. 415; Galveston, H. & S. A. Ry. Co. v. Perry (Tex. App.), 85 S. W. 62.]

We hold that the plaintiff's evidence tended to show that he was a fellow-servant of Haley. It therefore becomes a question for the jury to determine whether Haley's act was a negligent act and if so whether the plaintiff was guilty of negligence contributing to his own injury. It certainly cannot be said as a matter of law, upon the evidence before us, that Haley's act was not negligent.

We cannot agree with respondent's contention that there was a total failure of proof of any fraud and deceit on the part of the respondent on the question of fraudulently obtaining a release from plaintiff. This issue was clearly defined in the pleadings, the mining company having set up an alleged release in its answer for a consideration of ninety dollars and plaintiff in his reply having charged that the ninety dollars was paid to him in small sums from week to week after the injury, that

it was not given or received as a settlement of his right to damages on account of his injuries, that when he signed the paper set up as a release defendant's agent told him it was the same as signing the pay-roll of the defendant as plaintiff had done while working for defendant; that plaintiff could not see how to read the paper and was compelled to rely upon. the truth of the statements of the defendant's said agent and that he did rely upon said statements and believed that he was merely in effect signing the pay-roll of the defendant.   The so-called release is not brought here by either party so that we have no way of knowing its contents.   Plaintiff's testimony substantially bears out the allegations of his reply.   While he could read some, he had a bandage over his right eye at the time and didn't try to read the paper but relied on the defendant's agent who said it was only a receipt for six dollars, the same as signing the pay-roll, and that what this agent purported to read from the paper he signed was not anything like what appeared on the release set up in defendant's answer. Being asked on cross-examination to tell something that was in the release attached to the answer that was not read to him that night, he answered: "You didn't say, 'In full of all charges and damages and claim for alleged personal injuries, sustained to eye.' You never had that in there.   You never read it off of the paper.   Before that night I had signed the book, the pay-roll, and I knew it was a different paper than which I had been signing before and for that reason I wanted you to read it." We think the evidence was sufficient to put this issue to the jury.

For the reasons stated the judgment is reversed and the cause remanded.   *Cox, P. J.,* and *Sturgis, J.,* concur.